# Exhibit 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------x

MIRANDA ISABEL CATABOIS,

        Plaintiff,

    -against-

GEORGE T. PETERS, LAW OFFICE OF PETERS &
ASSOCIATES, LAW OFFICE OF GEORGE T.
PETERS, PLLC, BERKELEY EDUCATIONAL
SERVICES OF NEW YORK, INC. d/b/a
BERKELEY COLLEGE,

        Defendants.

---------------------------------------------------------------x

Index No. 101243/2023

**SUMMONS**

Plaintiff designates NEW YORK
COUNTY as the place of trial.

The basis of venue is based on where
the claim occurred/residence of a
party

TO THE ABOVE-NAMED DEFENDANTS:

       You are hereby summoned and required to serve upon plaintiff's attorney an answer to the
Verified First Amended Complaint in this action within 20 days after the service of this summons,
exclusive of the day of service, or within 30 days after service is complete if this summons is not
personally delivered to you within the State of New York. In case of your failure to answer, judgment
will be taken against you by default for the relief demanded in the Verified First Amended Complaint.

       The basis for venue is CPLR 503(a) and (c) because at least one of the parties resides in New
York County and a substantial part of the events or omissions giving rise to the claims set forth in the
Verified First Amended Complaint occurred in New York County.

Dated: March 20, 2024
      New York, New York

                   The Law Firm of Andrew M. Stengel, P.C.
                         *Attorneys for Plaintiff*

                         By: Andrew M. Stengel
                           Katherine E. Mayo
                     11 Broadway, Suite 715
                     New York, NY 10004
                     Tel: (212) 634-9222

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------------------------x

MIRANDA ISABEL CATABOIS,

        Plaintiff,

    -against-

GEORGE T. PETERS, LAW OFFICE OF PETERS &
ASSOCIATES, LAW OFFICE OF GEORGE T. PETERS,
PLLC, BERKELEY EDUCATIONAL SERVICES OF
NEW YORK, INC. d/b/a BERKELEY COLLEGE,

       Defendants.

--------------------------------------------------------------------------x

Index No. 101243/2023

**VERIFIED FIRST
AMENDED COMPLAINT**

Jury Trial Demanded

Plaintiff Miranda Isabel Catabois by her attorneys, The Law Firm of Andrew M. Stengel, P.C.,

11 Broadway, Suite 715, New York, New York, 10004, alleges upon knowledge with respect to

herself, and upon information and belief as to all other matters, as follows.

## NATURE OF ACTION

1.     Pursuant to CPLR § 214-j, New York's Adult Survivors Act ("ASA"), Plaintiff

Miranda Catabois brings this revival action to vindicate her rights.  The ASA historically opened a

period for victims and survivors of adult sexual abuse and sexual assault in the State of New York

to pursue claims that would otherwise be untimely.

2.     In 2011, Ms. Catabois was enrolled as a student with Berkeley College, pursuing an

Associate Degree in Paralegal Studies.

3.     In January 2012, Berkeley College placed Ms. Catabois in an internship for school

credit with attorney George T. Peters.

4.     One night in January 2012 Mr. Peters kept Ms. Catabois at the office late where he

forcefully grabbed Ms. Catabois's breasts repeatedly and put his hand down her pants and touched

FILED: NEW YORK COUNTY CLERK 03/20/2024 12:53 PM          INDEX NO. 101243/2023

NYSCEF DOC. NO. 3          24-11373-pb     Doc 65-2    Filed 02/19/25    Entered 02/19/25 10:44:28    Exhibit Amended          RECEIVED NYSCEF: 03/20/2024
                                                        Complaint     Pg 4 of 21

her vagina, despite her repeated physical resistance and verbal protests.

     5.     As a result, Ms. Catabois has suffered severe emotional distress as result of the sexual

assaults including symptoms of post-traumatic stress disorder, depression, anxiety and other acute

physical symptoms.

## PARTIES, JURISDICTION AND VENUE

     6.     Plaintiff Miranda Catabois is a female citizen of Kings County, State of New York

and at all relevant times to this Verified First Amended Complaint, she was living in the City of New

York, and she was at least 18 years old.

     7.     At all relevant times, Defendants George T. Peters, Law Office of Peters & Associates

and Law Office of George T. Peters, PLLC (hereinafter collectively referred to as "Defendant Peters"

or "Mr. Peters"), had his/their principal place of business at 1825 Park Avenue, Suite 1102, New

York, New York 10035 as well as 2510 Valentine Avenue, Bronx, New York 10458. Defendant

Peters is engaged in the business of providing legal representation and acting as an attorney for

personal injury cases.

     8.     At all relevant times, Defendant Berkeley Educational Services, Inc. d/b/a Berkeley

College (hereinafter "Berkeley College") was and is a corporation authorized to do business in the

State of New York.

     9.     At all relevant times, Defendant Berkeley College's principal place of business was

and is located at 3 East 43rd Street, New York, New York 10017.

     10.     This Court has jurisdiction over the subject matter of this action and the parties

pursuant to CPLR 301.

     11.     This Court has jurisdiction over this action because the amount of damages Plaintiff

seeks exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

     12.     Venue is proper in New York County pursuant to CPLR 503 because a substantial

FILED: NEW YORK COUNTY CLERK 03/20/2024 12:53 PM
NYSCEF DOC. NO. 3                                                        INDEX NO. 101243/2023

                                                                         RECEIVED NYSCEF: 03/20/2024
24-11373-pb    Doc 65-2    Filed 02/19/25    Entered 02/19/25 10:44:28    Exhibit Amended
                           Complaint    Pg 5 of 21

part of the events giving rise to the claims occurred in New York County and because at least one

party resides in New York County.

## ADULT SURVIVORS ACT

13.     Each of Plaintiff's causes of action is timely pursuant to New York's Adult Survivors

Act (CPLR 214-j), which was enacted on May 24, 2022, and effective six months later. Ms. Catabois,

who at all relevant times was at least 18 years old, alleges that Defendants committed intentional or

negligent acts or omissions that resulted in Ms. Catabois suffering physical, psychological or other

injuries or conditions as a direct and proximate result of conduct that constitutes sexual offenses, as

defined in Article 130 of the New York State Penal Law, committed against an adult 18 years of age

or older. This action is commenced within the time limits of CPLR 214-j.

## NO APPORTIONMENT OF LIABILITY

14.     Pursuant to CPLR 1603, the causes of action herein are exempt from the operation of

CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not

limited to, CPLR 1602(5), 1602(7) and 1602(11), thus precluding Defendants from limiting a

defendant's liability by apportioning some portion of liability to any joint tortfeasor.

## JURY DEMAND

15.     Plaintiff demands a trial by jury on all issues so triable.

## FACTUAL ALLEGATIONS

16.     In December of 2011, Ms. Catabois was enrolled as a student at Berkeley College,

pursuing an Associate Degree in Paralegal Studies.

17.     To graduate and successfully complete the degree, all students enrolled in the

Paralegal Studies program were required to complete an internship course, which was for credit and

consisted of an in-class component and an off-campus internship to be completed alongside the class.

24-11373-pb    Doc 65-2    Filed 02/19/25    Entered 02/19/25 10:44:28    Exhibit Amended
Complaint    Pg 6 of 21

18.     Students were assigned a career counselor within the Career Services Department of Berkeley College. The career counselor assisted and assists the student with applying for internships available only through Berkeley College's online portal. The career counselor also assisted and assists the student throughout the entire internship process of interviewing, being assigned at an internship and throughout the completion of the internship itself.

19.     In December 2011, Ms. Catabois's career counselor at Berkeley College, Jairo Borja, assisted Ms. Catabois with applying for an internship with Mr. Peters through Berkeley's online portal. Mr. Borja assisted with getting the interview scheduled and he was set to assist throughout the completion of the internship.

20.     In December of 2011, as arranged by Mr. Borja, Ms. Catabois interviewed for an internship with Mr. Peters to intern for the Law Office of George T. Peters, located at the time at 402 West 145th Street, 2nd Floor in Manhattan.

21.     In December 2011, Ms. Catabois was hired for the internship which began in January 2012 during the winter 2012 academic semester/session for Berkeley College.

22.     Ms. Catabois began working as an intern for Mr. Peters at his law office in January 2012. She had only managed to work less than two weeks before the alleged sexual assaults took place.

23.     Prior to the date of the sexual assaults, Ms. Catabois worked directly with Mr. Peters's office manager, Jessica Vargas and another intern from Berkeley College, a male whose name is currently unknown.

24.     On the date of the sexual assault in January 2012, the office manager was out of the office and it was only Ms. Catabois, Mr. Peters and the other intern working on this day.

25.     On the date of the sexual assault in January 2012, Mr. Peters sent Ms. Catabois to run

paperwork errands towards the end of the day, specifically near the time her shift at the office was ending that afternoon.

26.    Ms. Catabois was knowingly unfamiliar with the neighborhood and was never sent out on an errand before. However, she complied and completed the errands based on the understanding that interns generally are asked to run a wide range of errands and tasks.

27.    By the time the errands were complete, and Ms. Catabois returned to the law office, it was time for her and the other intern to leave.

28.    Rather than allowing Ms. Catabois to leave for the day, Mr. Peters assigned her some additional paperwork tasks to complete. At this point, the other intern left for the day and the only two people remaining in the second-floor office were Ms. Catabois and Mr. Peters.

29.    Once Ms. Catabois completed the additional work assigned, it was about 6:00 p.m. and dark outside. When she knocked on Mr. Peter's office door to inform him the work was done, he told her to come into the office in order to listen to the office voice messages and take notes.

30.    When Ms. Catabois entered the office, the lights were dimmed extremely low and Mr. Peters was lying down on a sofa in the office on the opposite side of the office desk.

31.    Ms. Catabois completed the requested task at the office desk. Once completed, Mr. Peters sat up and told Ms. Catabois to come to the sofa. When she did so, he engaged in non-work-related conversation, flirting and asking Ms. Catabois about her personal and social life, her friends, her dating life and what her friends like to do for fun. In discomfort, Ms. Catabois responded that she and her friends play UNO for fun.

32.    Mr. Peters then asked Ms. Catabois if she had social media. She said that she had Facebook. Her phone is in her hand, Mr. Peters requested to see her Facebook page. When she turned on her phone, Mr. Peters grabbed the phone and scrolled through her Facebook page. He then offered

to have dinner and play UNO with Ms. Catabois, gave her cash and directed her to buy a game of UNO at a local pharmacy and to buy dinner from a specific place and bring it back to the office.

33.     Despite being uncomfortable at this point, Ms. Catabois complied as she is unfamiliar with professional workspaces and law offices, and she believed that behavior like this might be normal, professional adult behavior.

34.     As Ms. Catabois was outside picking up the food and card game, it was about 8:00 p.m., and she began feeling on edge and uncomfortable. She didn't want to make assumptions, but she wanted to act proactively. Before returning to the office with the food and card game, she instinctively researched Mr. Peters on Google and sent her friends a screenshot of the result, which included his name, picture, name and address of his law office. Thinking of how he grabbed her phone earlier in the evening, she deleted the texted screenshot from her phone. In sending the message to her friends, she recognized she felt uncomfortable with the evening's events that far and did not know what was to come. However, she recognized she was alone with an authority figure who was behaving inappropriately and wanted her friends to know where she was last in case something happened to her.

35.     When Ms. Catabois returned to the office, she was seated at one end of Mr. Peters's desk. Mr. Peters was seated at his desk on the opposite side. Mr. Peters proceeded to pull out two red cups (about 10 ounces each) and a bottle of vodka from what appeared to be a mini-fridge. Ms. Catabois watched closely as Mr. Peters poured about 8 ounces of vodka into a cup and gave it to her, and then poured about 1 to 2 ounces of vodka into his own cup in a clear attempt to remain sober and get Ms. Catabois inebriated.

36.     Having recognized this, Ms. Catabois brought the cup to her mouth routinely so as not to strike concern or alert Mr. Peters. However, she acted as if she was drinking or took a small

sip, to make sure she consumed no more than a total of 1 ounce of the vodka and remained sober.

37.     Mr. Peters then pulled out a white dildo/sex toy from his desk and asked Ms. Catabois if she knew what it was. At which time, Ms. Catabois nervously responded, "No." He then began asking her questions about her sexual experience and history. During which time, he made stroking hand gestures with the sex toy towards Ms. Catabois.

38.     Mr. Peters then took the deck of UNO cards and said, "Let's play." He then told Ms. Catabois that for every round she lost, she had to lose a piece of clothing. She nervously responded, "no."

39.     As they played the card game, Ms. Catabois evidently lost a round. At which time, Mr. Peters arose from his desk and walked over to Ms. Catabois, sat at the edge of the desk, trapping her in between his legs and began pulling up and attempting to remove her top.

40.     At this point, Ms. Catabois wanted to end the night safely. She feared that if she aggressively fought Mr. Peters off, he might panic and physically overpower and harm her. Ms. Catabois was also concerned that Mr. Peters would lie to Berkeley College if Ms. Catabois let him know she, at this point, intended to report his actions to the school.

41.     In an attempt to preserve her safety and her academic career, Ms. Catabois responded "no" to all of Mr. Peters's forcible touching and attempted to remove his hands from her body every time he touched her.

42.     As one hand of Mr. Peters lifted Ms. Catabois's top, another was on her breast, fondling the top skin of her breast as well as the front of her breast and areola through her bra. He repeatedly attempted to pull one of her breasts out of her bra and could not, due to the tightness of the bra.

43.     As Ms. Catabois repeatedly responded with a "no," she removed one of Mr. Peters's

hands from her lifted top, Mr. Peters then used his other hand to grope her breast. It was a repeated cycle that lasted for minutes until Ms. Catabois felt Mr. Peters's hand tug at the belt of her pants. His hand touched her vagina over her pants and his finger went into her pants and touched the lowest part of her stomach and the top of her vagina through her underwear. Once Ms. Catabois felt this, she immediately stood up and in an attempt to safely escape, and she told Mr. Peters she needed to use the restroom.

44.     All of the sexual contact of Ms. Catabois by Mr. Peters was without her consent.

45.     As Ms. Catabois got up and began walking out of the office towards the restroom, she could hear Mr. Peters's footsteps behind her, following her down the corridor. She luckily made it to the bathroom and locked the door. She could hear him standing and waiting outside the bathroom door.

46.     Ms. Catabois stayed in the bathroom for over 10 to 15 minutes in an attempt for Mr. Peters to cool off sexually. Through the open staircase, Ms. Catabois eventually heard men on the first floor and heavy things moving around. Now that she was no longer alone with Mr. Peters, she opened the door to see a man downstairs apparently changing the light bulb.

47.     When Ms. Catabois came out the bathroom, Mr. Peters offered to drive her to the L train to go home as her commute from Harlem to Canarsie Brooklyn was far and it was past 10:00 p.m. at that point.

48.     Ms. Catabois complied, again in an attempt to not anger him to harm her physically or to retaliate towards her academically.

49.     During the drive to the train station, Mr. Peters repeatedly placed his hand on Ms. Catabois's left thigh, sexually rubbing her upper and inner thigh. Each time he did it, she nervously responded "no" and gently removed his hand.

FILED: NEW YORK COUNTY CLERK 03/20/2024 12:53 PM
NYSCEF DOC. NO. 3

24-11373-pb    Doc 65-2    Filed 02/19/25    Entered 02/19/25 10:44:28    Exhibit Amended
Complaint    Pg 11 of 21

INDEX NO. 101243/2023
RECEIVED NYSCEF: 03/20/2024

50.     Upon exiting Mr. Peters's car at the Bedford Avenue L Train stop, Mr. Peters leaned over to the right and loudly and aggressively slapped Ms. Catabois on the butt. She was startled and jumped as it was painful and done unexpectedly without consent. It was so loud that bystanders on the street corner heard it and abruptly turned around.

51.     Upon safely returning home, Ms. Catabois sent Mr. Borja an email through her Berkeley College email account informing him that she needed to speak to him urgently regarding the internship.

52.     The next morning Ms. Catabois spoke to Mr. Borja over the phone and provided him with every detail of the sexual assaults that took place the night before. She also provided him an email with a detailed account.

53.     Mr. Borja placed Ms. Catabois with another internship. However, no follow-up was made to recommend resources to process and work through the traumatic event that took place.

54.     The evening after informing Mr. Borja of what took place, Ms. Catabois received a taunting message from Mr. Peters via Google Hangout asking her if she wanted to play UNO again. Ms. Catabois felt scared and traumatized and immediately deleted the message.

55.     Due to anxiety and unprocessed trauma and no guidance from Berkeley College, Ms. Catabois stopped attending the second internship. Rather than providing alternative options to complete the course, Mr. Borja informed Ms. Catabois that he informed her teacher to drop her from the course and prompted her to attempt the course next semester.

56.     With this course being Ms. Catabois's final course to graduate, she dropped out of school due to anxiety and fear about attending another internship. When Ms. Catabois dropped out with only one class remaining to graduate and with knowledge of the sexual assaults that took place at an internship she was placed in by Berkeley College, neither Mr. Borja nor any Berkeley College

representative reached out to provide assistance of any kind.

57.    As a result of the immense trauma Ms. Catabois suffered at the hands of Mr. Peters

and as a result of Berkeley College's breach of duty to her safety as their student, she has suffered

and continues to suffer from immense emotional distress that has impacted her in numerous areas of

her life.

58.    Due to the emotional distress, Ms. Catabois has been severely depressed, and anxious

and suffers from symptoms of post-traumatic stress disorder and has been diagnosed as such. She

has difficulty working with men in the workplace and is extremely hypervigilant around men at

work, working to not be left alone to close the office with her male boss.

59.    Ms. Catabois has been unable to adjust to life since the sexual assault. Due to having

to endure sexual forcible touching without consent, she has lost her self-esteem and sense of

sexuality and femininity. She has lost the ability to have pleasurable thoughts as it relates to sex and

has been abstinent as a result, unable to form romantic relationships.

60.    Since the sexual assault, Ms. Catabois has felt immense hopelessness and loss of

direction and purpose in life. She feels unfulfilled and has had suicidal ideations.

61.    Ms. Catabois, since the sexual assault, has also isolated herself completely from all

types of relationships. She engages in no romantic relationships and has abandoned her friendships.

Additionally, she no longer has a close relationship with any family members. Her depression and

symptoms of post-traumatic stress keep her from attending or engaging in any and all family

gatherings and celebrations.

62.    Due to the weaponizing of sex during the sexual assault, Ms. Catabois does not

engage in any romantic relationships which has caused her to be unable to fulfill her past dream of

getting married, building a family and having children.

63.     Prior to the sexual assault, Ms. Catabois was a student with a GPA above 3.5 at Berkeley College, regularly appearing on both the President's List and the Dean's List. She volunteered with BerkeleyCares and completed work study as a tutor in Berkeley College's Academic Support Center. In high school, she was a member of mock trial, moot court and debate teams. Her purpose and passion was to be a lawyer. Mr. Peters's sexual assaults robbed Ms. Catabois of her dream of practicing law and she stopped volunteering and tutoring as well. When attempting to complete her bachelor's, she has been unsuccessful and unable to complete courses due to her post-traumatic stress, depression, anxiety and hopelessness.

64.     In fear of pursuing law any further, Ms. Catabois now works a lower-paying job and career.

65.     Medically, as a result of Mr. Peters's sexual assault, Ms. Catabois has been diagnosed with depression and anxiety and she exhibits symptoms of post-traumatic stress disorder and goes to therapy weekly as a result.

66.     Additionally, Ms. Catabois has also been diagnosed with PCOS (Polycystic Ovarian Syndrome) due to elongated periods of stress causing elongated periods of high levels of cortisol (stress hormone) in her body causing increased androgen levels, thus causing PCOS. As a result of Ms. Catabois's PCOS, her chances of having children are lower, she suffers daily from painful menstrual bleeding, weight gain, hair loss, acne, facial hair growth and decreased libido.

67.     Defendants' acts and omission constitute gross negligence and reckless disregard for the safety of Plaintiff.

## FIRST CAUSE OF ACTION:
### *(Battery, Intentional Violations of Article 130 of the New York State Penal Law: Defendant Peters)*

68.     Plaintiff repeats, reiterates and realleges each and every allegation contained in

preceding paragraphs inclusive with the same force and effect as though herein set forth at length.

69.     Defendant Peters's heinous acts against Ms. Catabois constitute crimes under Article 130 of the New York State Penal Law.

70.     Defendant Peters committed the crime of Sexual Abuse in the First Degree, a felony, and attempted to commit the same, in violation of Penal Law § 130.65(1) against Ms. Catabois.

71.     Defendant Peters subjected Ms. Catabois to sexual contact by forcible compulsion and attempted the same.

72.     Defendant Peters committed the crime of Forcible Touching, a misdemeanor, in violation of Penal Law § 130.52(1) against Ms. Catabois.

73.     Defendant Peters forcibly touched Ms. Catabois's sexual or other intimate parts for the purpose of degrading or abusing her, or for the purpose of gratifying his own sexual desire.

74.     Defendant Peters committed the crime of Sexual Abuse in the Third Degree, a misdemeanor, Penal Law § 130.55.

75.     Defendant Peters subjected Ms. Catabois to sexual contact without her consent.

76.     As a direct result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

77.     By reason of the foregoing, Defendant Peters is liable to Plaintiff for compensatory damages and punitive damages, together with interest and costs.

## SECOND CAUSE OF ACTION:
### *(Negligence; Defendant Berkeley College)*

78.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

79.     Defendant Berkeley College owed a duty to take reasonable measures to protect its students from harm, including Ms. Catabois, when participating in school internships.

80.      Defendant Berkeley College breached its duty of care to Ms. Catabois.

81.      Defendant Berkeley College knew, or was negligent in not knowing, that there existed
a danger to students who were placed in an internship with Defendant Peters.

82.      At all times relevant herein, Defendant Berkeley College had a duty to use reasonable
care in the hiring, employment, training, supervision, and retention of Defendant Peters as placement
for an internship and to find out whether Defendant Peters was competent to oversee internships
without danger of harm to others, including Ms. Catabois.

83.      At all times relevant herein, Defendant Berkeley College had the duty and
responsibility to create, develop, and implement programs, guidelines, policies, procedures, training,
and supervision to prevent, deter, detect, and otherwise minimize the risk of sexual abuse and/or
sexual assaults of women who were placed in internships with Defendant Peters, including Ms.
Catabois.

84.      At all times relevant herein, Defendant Berkeley College had a duty to, among other
things, monitor, direct, review, evaluate, train, meet with, interview, investigate or otherwise
supervise student internships, including Defendant Peters, in order to deter, prevent, detect and
otherwise minimize the risk of sexual abuse and/or sexual assaults by its internship placements,
including Defendant Peters.

85.      At all times relevant herein, Defendant Berkeley College had the duty and
responsibility to report all instances of sexual abuse and/or sexual assaults to the appropriate
authorities and applicable laws and regulations.

86.      Defendant Berkeley College breached its duty to take reasonable measures to maintain
its student internship programs in reasonably safe conditions, including to protect Ms. Catabois from
sexual assaults and/or abuse by internship supervisors, including Defendant Peters.

24-11373-pb    Doc 65-2    Filed 02/19/25    Entered 02/19/25 10:44:28    Exhibit Amended
Complaint    Pg 16 of 21

87.     Defendant Berkeley College breached its duty to exercise reasonable care to protect Ms. Catabois from the reasonably foreseeable threat of sexual assaults and/or abuse by failing to implement appropriate practices and procedures for the supervision of internships, including Defendant Peters.

88.     As a direct and proximate result of Defendant Berkeley College's acts and omissions, Ms. Catabois sustained and will continue to sustain damages.

89.     At all times relevant herein, Defendant Berkeley College failed to train its staff about how to recognize and interrupt behavior that leads to sexual victimization.

90.     At all times relevant herein, Defendant Berkeley College failed to train its staff about how to recognize and respond to signs that a female who was placed in a student internship had been or was continually being sexually assaulted or sexually abused.

91.     As a direct result of the foregoing, Ms. Catabois was injured solely and wholly as a result of the gross negligence, negligence, carelessness, and recklessness of Defendant Berkeley College and/or their agents, servants and employees, without any negligence on the part of Ms. Catabois contributing thereto.

92.     By reason of the foregoing, Defendant Berkeley College is liable to Plaintiff for compensatory damages and for punitive damages, together with interest and costs.

## THIRD CAUSE OF ACTION:
### *(Negligent Infliction of Emotional Distress; Defendants Berkeley College)*

93.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

94.     Defendant Berkeley College owed Ms. Catabois a duty of care.

95.     Defendant Berkeley College breached its duty of care to Ms. Catabois.

96.     Defendant Berkeley College's breach unreasonably endangered Ms. Catabois's

physical safety and caused Plaintiff to fear for her safety.

97.     Defendant Berkeley College, with knowledge of the sexual assaults of Ms. Catabois,

ratified the sexual assaults by failing to provide counseling to Ms. Catabois, which violated school

rules, regulations and procedures.

98.     Defendant Berkeley College acts and omissions were extreme and outrageous.

99.     Defendant Berkeley College endangered Ms. Catabois's safety and well-being and

caused her to suffer, inter alia, fear, anxiety, shame, humiliation and physical and emotional pain.

100.    As a direct and proximate cause of Berkeley College conduct, Ms. Catabois suffered

severe emotional distress including but not limited to physical, mental and emotional distress.

101.    By reason of the foregoing, Defendant Berkeley College is liable to Plaintiff for

compensatory damages and for punitive damages, together with interest and costs.

## FOURTH CAUSE OF ACTION:
### *(Victims of Gender-Motivated Violence Protection Law,*
### *N.Y.C. Admin. Code §§ 10-1102, Et Seq.; All Defendants)*

102.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set

forth herein.

103.    Ms. Catabois is a victim of a crime of violence and a crime motivated by gender

pursuant to N.Y.C. Administrative Code Section § 10-1103.

104.    Defendant Peters committed an act or series of acts that constitute misdemeanor(s)

and/or felony(ies) against Ms. Catabois.

105.    The acts of Defendant Peters presented a serious risk of physical injury to Ms.

Catabois.

106.    The acts of Defendant Ms. Catabois were crimes of violence committed because of

Ms. Catabois's gender or on the basis of Ms. Catabois's gender, and due, at least in part, to an animus

based on Ms. Catabois's gender.

107.    Ms. Catabois was injured by the commission of a crime(s) of violence motivated which

was motivated by her gender.

108.    Defendant Berkeley College enabled the sexual assaults of Ms. Catabois by

Defendant Peters.

109.    By reason of the foregoing, Defendants are liable to Plaintiff for compensatory

damages and punitive damages, together with interest, costs and attorneys fees.

### FIFTH CAUSE OF ACTION:
*(Gender and/or Sex Discrimination, Hostile Work Environment and Constructive Discharge*
*N.Y.C. Admin. Code §§ 8-102, Et Seq.; All Defendants)*

110.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set

forth herein.

111.    Ms. Catabois is a woman and therefore a member of a protected class under New York

City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code Section § 8-107(1)(a).

112.    Ms. Catabois was considered to be an employee of Defendant Peters pursuant to the

NYCHRL, N.Y.C. Admin. Code Section § 8-102.

113.    Defendants Law Office of Peters & Associates, Law Office of George T. Peters, PLLC

Berkeley College were places or providers of public accommodation as defined by the NYCHRL,

N.Y.C. Admin. Code § 8-102.

114.    Ms. Catabois was repeatedly discriminated against by Defendant Peters because of her

gender and treated less well than similarly situated male students and/or male interns because of her

gender.

115.    Ms. Catabois was subjected to repeated unwanted sexual conduct in the workplace that

constituted discrimination based on her sex.

116.   The repeated unwanted gender-based conduct of Mr. Peters against Ms. Catabois created a hostile work environment.

117.   Defendant Peters intentionally created working conditions so intolerable, difficult and unpleasant that a reasonable person would be compelled to quit.

118.   Ms. Catabois was forced to quit involuntarily due to the intolerable, difficult and unpleasant working conditions.

119.   Defendants Law Office of Peters & Associates and Law Office of George T. Peters, PLLC are liable for Defendant Peters's conduct in *respondeat superior*.

120.   Defendant Berkeley College permitted the sex discrimination and sexual harassment of Ms. Catabois by Defendant Peters.

121.   Defendant Berkeley College engaged in and knowingly permitted Defendant Peters to engage in sex discrimination and harassment against Ms. Catabois.

122.   As a direct and proximate result of the sex discrimination, sexual harassment and hostile work environment, Ms. Catabois has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination and great humiliation, which has manifested in emotional distress including but not limited to physical, mental and emotional distress.

123.   By reason of the foregoing, Defendants are liable to Plaintiff for compensatory damages and punitive damages, together with interest, costs and attorneys fees.

### **DAMAGES DEMAND**

WHEREFORE, PLAINTIFF demands judgment against Defendants in compensatory damages, plus punitive damages, interest, costs, disbursements, and attorneys' fees, together with such other and further relief as the Court deems just and proper.

Dated: March 20, 2024
        New York, New York

## **VERIFICATION**

STATE OF NEW YORK          )
                              ) ss.:

COUNTY OF NEW YORK   )

      ANDREW M. STENGEL, an attorney duly admitted to practice in the courts of the State of New York makes the following statement under penalty of perjury pursuant to CPLR 2106:

      I am the attorney of record for plaintiff in the matter within. I have read the foregoing Verified First Amended Complaint and I know the contents thereof; that the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters, I believe them to be true. The grounds for my belief are from information received from plaintiff.

      This verification is made by me rather than by plaintiff because plaintiff is not presently within New York County, the County in which I maintain my office; and plaintiff does not reside within New York County.

Dated: March 20, 2024
      New York, New York

                                      Andrew M. Stengel, Esq.
                                      The Law Firm of Andrew M. Stengel, P.C.
                                      11 Broadway, Suite 715
                                      New York, NY 10004
                                      Tel: (212) 634-9222
                                      Fax: (212) 634-9223
                                      andrew@stengellaw.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------------x

MIRANDA ISABEL CATABOIS,

      Plaintiff,                        Index No. 101243/2023

     -against-

GEORGE T. PETERS, LAW OFFICE OF PETERS &
ASSOCIATES, LAW OFFICE OF GEORGE T. PETERS,
PLLC, BERKELEY EDUCATIONAL SERVICES OF
NEW YORK, INC. d/b/a BERKELEY COLLEGE,

      Defendants.

------------------------------------------------------------------------x

===============================================================

**SUMMONS AND VERIFIED FIRST AMENDED COMPLAINT**

===============================================================

      Pursuant to 22 NYCRR 130-1.1, the undersigned, attorneys admitted to practice in the courts of New York State, certify that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

Dated: <u>March 20, 2024</u>

                              _____

                                  Andrew M. Stengel, Esq.

The Law Firm of Andrew M. Stengel, P.C.
11 Broadway, Suite 715
New York, NY 10004
Tel: (212) 634-9222
Fax: (212) 634-9223
andrew@stengellaw.com
